UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CONSTAR INTERNATIONAL INC., et al.,[1] | ) Case No. 08-_____ (____) |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

### MOTION OF THE DEBTORS FOR AN ORDER DIRECTING
### JOINT ADMINISTRATION OF RELATED CHAPTER 11 CASES

The above-captioned debtors and debtors in possession (each a "Debtor" and, collectively, the "Debtors") hereby move this Court for the entry of an order substantially in the form attached hereto as Exhibit A (the "Order") under sections 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") directing joint administration of the Debtors' chapter 11 cases and the consolidation thereof for procedural purposes only. The facts and circumstances supporting this motion (the "Motion") are set forth in the concurrently filed affidavit of Walter Sobon. In support of the Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors and the last four digits of their respective tax identification numbers are: Constar International Inc. (XX-XXX9304), BFF, Inc. (XX-XXX1229), DT, Inc. (XX-XXX7693), Constar, Inc. (XX-XXX0950), Constar Foreign Holdings, Inc (XX-XXX8591) and Constar International U.K. Limited. The address of Constar International Inc., BFF, Inc., DT, Inc., Constar, Inc. and Constar Foreign Holdings, Inc. is One Crown Way, Philadelphia, Pennsylvania 19154. The address of Constar International U.K. Limited is Moor Lane Trading Estate, Sherburn in Elmet, Nr Leeds, North Yorkshire LS25 6ES, UK.

## Business of the Debtor

1.      Constar International Inc., a Delaware corporation ("Constar"), and its subsidiaries are a global producer of and one of the largest North American suppliers of polyethylene terephthalate ("PET") plastic containers for conventional PET applications, primarily designed and manufactured for soft drinks and water. Constar also has an expanding position in the growing custom PET market, designed for food, juices, teas, sport drinks, new age beverages and beer.

2.      Constar was a major international participant in the rapid growth of two-liter PET soft drink bottles in the early 1980s, the introduction of single serve soft drink bottles for convenience sales in the 1990s, and the development of the bottled water market. Headquartered in Philadelphia, Pennsylvania, Constar employs approximately 1,400 employees. Constar currently has 13 plants in the United States and 2 plants in Europe.

3.      Constar manufactures PET containers for two product types; conventional PET and custom PET. The conventional PET container business consists of high volume production of containers for use in packaging soft drinks and water. In 2007, conventional PET products represented approximately 74% of Constar's sales. In contrast, custom PET container applications include food, juices, teas, sport drinks, new age beverages, household chemicals, beer and flavored alcoholic beverages. The containers for custom PET applications generally require more complex manufacturing processes, unique materials, innovative product designs and technological know-how. Custom PET products represented approximately 22% of Constar's sales in 2007. Constar also produces plastic closures and other non-PET containers, representing approximately 4% of sales in 2007.

4. Constar primarily manufactures and sells bottles in the United States and preforms[2] in Europe. Approximately 78% of Constar's 2007 revenue was attributable to sales in the United States and the remainder was attributable to sales in Europe. Constar's customers are global, international consumers of Constar products who rely on the interconnected nature of its business to supply them.

5. Generally, Constar supplies its customers (both domestic and international) pursuant to contracts with terms of one year or longer. Substantially all of the Company's sales are made pursuant to mechanisms that allow for the pass-through of changes in the price of PET resin, the primary raw material and component cost of Constar's products.

6. Constar's top global customer, Pepsi, accounted for approximately 38% of its sales in 2007. On October 10, 2008, the Company executed a new four-year cold fill supply agreement with Pepsi. Under the terms of this new agreement, effective January 1, 2009, the Company expects that there will be an approximate 30% reduction in cold fill volume as compared to 2008, with a shift towards fewer bottles and more preforms but on improved economic terms. The new agreement with Pepsi provides the Company with the exclusive right to supply, subject to certain exceptions, 100% of the volume required at specified Pepsi filling locations. The term of the new agreement may be extended for a fifth year at Pepsi's option.

## Corporate Structure of the Debtors

7. Constar is the parent of four wholly-owned subsidiaries: BFF, Inc., a Delaware corporation, DT, Inc., a Delaware corporation, Constar, Inc., a Pennsylvania corporation, and Constar Foreign Holdings, Inc., a Delaware corporation ("Holdings").

---

[2] Preforms are test-tube shaped intermediate products in certain blow-molding applications.

Holdings, in turn, is the parent of three wholly-owned foreign subsidiaries: Constar International Holland (Plastics) B.V., a Dutch *besloten vennootschap* ("Constar Holland"), Constar Plastics of Italy S.r.l. ("Constar Italy"), an Italian *società responsabilità limitata*, and Constar International U.K. Limited, a United Kingdom limited company ("Constar UK").

8. Constar was an independent publicly-held corporation from 1969 until 1992, when it was purchased by Crown Cork & Seal Company, Inc. ("Crown") and became a wholly-owned subsidiary of Crown. On November 20, 2002, Crown sold 10.5 million shares of its stock in Constar, comprising most of its equity in the company, through an initial public offering (the "IPO"). Since the IPO, Constar has been a public company and its common stock has been listed on the National Market System of The NASDAQ Stock Market (now known as the NASDAQ Global Market ("NASDAQ")) under the symbol "CNST." As of December 31, 2007, Crown owned 1,255,000 shares, or approximately 10%, of Constar's common stock.

9. As of November 10, 2008, 12,952,309 shares of Constar's common stock were issued and outstanding. There are no shares of preferred stock issued or outstanding. On September 10, 2008, Constar was given notice by NASDAQ that for 30 consecutive trading days its common stock had not maintained a minimum market value

of publicly held shares of $15 million as required for continued listing as set forth in Marketplace Rule 4450(b)(3).[3]

### Prepetition Indebtedness

10. Concurrently with the IPO, on November 20, 2002, Constar completed a public offering of $175 million aggregate principal amount of 11% Senior Subordinated Notes (the "Senior Subordinated Notes"). The Senior Subordinated Notes were issued at 98.51% of face value and mature on December 1, 2012, with interest payable semi-annually. The Company also entered into a $250 million senior secured credit facility consisting of a $150 million seven-year term loan and a $100 million five-year revolving loan facility. Constar used the proceeds from the subordinated note offering and the term loan arrangement to, among other things, repay inter-company indebtedness owed to Crown.

11. On February 11, 2005, Constar completed a refinancing which consisted of the sale of $220 million aggregate principal amount of Senior Secured Floating Rate Notes due 2012 (the "Senior Secured FRNs") and simultaneously entered into a four-year $70 million Senior Secured Asset Based Revolving Credit Facility with Citicorp USA, Inc. as Administrative Agent and certain other Lenders (the "ABR Facility"). The proceeds, net of expenses, from the refinancing were used to repay $30 million

---

[3] This notification has no present effect on the listing of Constar's common stock. In accordance with Marketplace Rule 4450(e)(1), the Company was provided 90 calendar days, or until December 10, 2008, to regain compliance with the Rule. Due to the unprecedented market conditions that occurred in September and October, NASDAQ determined to toll delistings under Marketplace Rule 4450(b)(3) until January 19, 2009. As a result of this tolling, Constar will have until March 16, 2009 in which to regain compliance with Marketplace Rule 4450(b)(3). If at any time prior to such date the market value of Constar's publicly held shares is $15 million or more for ten consecutive trading days, the NASDAQ staff will provide written notification that it has achieved compliance. If compliance with the Rule cannot be demonstrated by March 16, 2009, the Nasdaq staff will provide written notification to Constar that its securities will be delisted from the NASDAQ Global Market. At that time, Constar may appeal the Staff's determination to a Listing Qualifications Panel.

outstanding under Constar's former revolving loan facility and $197 million then outstanding under two term loans.

12. Under the ABR Facility, Constar has pledged as collateral all of the capital stock of its domestic and United Kingdom subsidiaries and 65% of the voting stock of its other foreign subsidiaries, as well as all of the inventory, accounts receivable, investment property, instruments, chattel paper, documents, deposit accounts and certain intangibles of Constar and its domestic and UK subsidiaries. On March 20, 2007, Constar amended the ABR Facility to, among other things, increase the facility to $75 million, lower interest charges by 50 basis points, lower excess collateral availability from $20 million to $15 million and extend the termination date to February 11, 2012. The ABR Facility is not secured by any of the collateral which secures the Senior Secured FRNs; they each have separate collateral pools.

13. The Senior Secured FRNs, which remain outstanding, bear interest at a rate of LIBOR plus 3.375%, with interest payable quarterly and principal maturing February 15, 2012. Pursuant to an interest rate swap executed in May 2005 with Citigroup Financial Products Inc., $100 million face amount of the Senior Secured FRNs have an effective fixed interest rate of 7.9%. The Senior Secured FRNs are secured by certain collateral of the Debtors as defined in the Senior Secured FRN Indenture and related security documents, but again, not by any of the collateral which secures the ABR Facility.

14. As of the Petition Date, the Debtors' prepetition indebtedness for borrowed money consists of:

- $220 million in principal amount of debt consisting of the Senior Secured FRNs, bearing interest at LIBOR plus 3.375% per annum (as noted above, the

Debtors have a swap agreement which effectively fixes the interest rate for $100 million of this series of Senior Secured FRNs at 7.9%);

- $175 million in principal amount of debt consisting of the Senior Subordinated Notes, bearing interest at 11% per annum; and

as of December 17, 2008:

- Approximately $23 million of borrowings under the ABR Facility, bearing interest at LIBOR plus 2.25% per annum;[4] and

- Approximately $6.1 million outstanding under undrawn letters of credit.

### Events Leading Up to the Debtor's Chapter 11 Filings

15. Over the past few years, a number of factors have caused Constar's revenues to decline and its net losses to increase, which events have, in turn, adversely affected Constar's ability to generate profits in the future. These factors include declining consumer demand for carbonated beverages, the continuing shift of Constar's customers to self-manufacturing of water and carbonated soft drink bottles, the rising cost of resin and the loss of some customers.

16. Constar's conventional product profitability is driven largely by price, volume and maintaining efficient manufacturing operations. Approximately 74% of Constar's sales in 2007 related to conventional PET containers which are primarily used for carbonated soft drinks and bottled water. Due to recent macroeconomic conditions, especially the marked slow down in the U.S. and European economies, fears of a broad and deep worldwide recession and the historically high gasoline prices that prevailed until recently, Constar's customers experienced weak demand in the convenience store and gas station distribution channels, where a high percentage of PET products are sold, and this has negatively impacted Constar's sales to soft drink and water manufacturers.

---

[4] As described infra, borrowings under the ABR facility are tied to receivables generated in the US and Europe.

17.     Additionally, Constar's conventional unit volume has declined—by 4.2% in the past year—due to the continued movement of water bottlers to self-manufacturing as well as consumers shifting their preferences from carbonated soft drinks to energy drinks and teas. The shift is expected to continue among water bottlers both due to economic and competitive factors at the retail level, as well as the fact that several water bottlers may either be consolidated or go out of business. As a result, profitability from bottled water bottle sales has declined and is expected to decline further in the future. Customers are also expected to move toward self-manufacturing of certain carbonated soft drink packages where cost effective.

18.     As a result of the circumstances discussed above, Constar incurred net losses of $10.3 million for the 2006 fiscal year and net losses of $26.3 million for the 2007 fiscal year. Continuing net losses have limited its ability to service debt and to fund operations. Net cash provided by operating activities decreased from $44.3 million in 2006 to $10.3 million in 2007. Servicing outstanding indebtedness requires annual payments of $37.3 million of interest. While additional borrowings under the ABR Facility may alleviate short-term cash needs, any such borrowings will only increase Constar's debt. Considering Constar's performance in 2006 and 2007, refinancing current debt will likely be impossible on commercially reasonably terms and may not be possible at all in today's environment. Thus, the Debtors have become unable to support their current debt load.

### Development of Proposed Plan

19.     In light of the foregoing developments, Constar and its representatives began discussions with certain holders of its Senior Subordinated Notes during October 2008 with respect to possible restructuring alternatives. These discussions led to the

formation of an ad hoc committee of holders of the Senior Subordinated Notes (the "Ad Hoc Committee"). Upon information and belief, the members of the Ad Hoc Committee hold, in the aggregate, over 50% of the principal face amount of the Senior Subordinated Notes. The Ad Hoc Committee has retained Goodwin Procter LLP as its counsel.

20. The first meeting between Constar (or its representatives) and the Ad Hoc Committee (or its representatives) occurred on October 27, 2008. At that meeting and in subsequent discussions, the parties discussed the conversion of the Senior Subordinated Notes into new equity of Constar. Such a transaction would be highly beneficial to the Debtors as it would significantly de-lever Constar's balance sheet and materially reduce its annual debt service obligations.

21. On or about December 15, 2008, Constar and a majority of the holders of the Senior Subordinated Notes reached an agreement in principle on the terms of a framework for a restructuring whereby Constar and certain of its subsidiaries would file chapter 11 petitions and, simultaneously, a pre-arranged plan of reorganization (a) providing for the conversion of the Senior Subordinated Notes into all of the equity of the reorganized entities, excluding those shares reserved for Constar's management, while (b) leaving the Debtors' trade vendors and the holders of the Senior Secured FRNs unimpaired. While the constituents of the Ad Hoc Committee are not legally bound to support the restructuring plan, the conversion of the Senior Subordinated Notes into equity, the payment of trade vendors in full and the reinstatement of the Senior Secured FRNs has the support of the holders of more than 50 percent of the outstanding Senior Subordinated Notes.

22.     Importantly, the Debtors' ABR Lenders have committed to provide debtor-in-possession financing (the "DIP Facility"), which then will be convertible into exit financing upon the satisfaction of certain conditions upon Constar's emergence from bankruptcy.

23.     As a result of the developments outlined above, the Debtors have filed this day (the "Petition Date") (a) their bankruptcy petitions, (b) First Day Pleadings relating to relief needed in connection with that filing, and (c) a motion setting a hearing date with respect to the Debtors' proposed disclosure statement on its reorganization plan.

## Relief Requested

24.     By this Motion, and as more specifically set forth in, and subject in all respects to, the Order, the Debtors request, among other things, entry of an order, pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1, directing the joint administration of the Debtors' chapter 11 cases and the consolidation thereof for procedural purposes only.

25.     Many of the motions, applications, hearings and orders that will arise in these chapter 11 cases will jointly affect each Debtor. For this reason, the Debtors respectfully submit that the interests of the Debtors, their creditors and other parties in interest would be best served by the joint administration of these chapter 11 cases. In order to optimally and economically administer the Debtors' pending chapter 11 cases, such cases should be jointly administered, for procedural purposes only, under the case number assigned to Constar International Inc.

26. The Debtors also request that the Clerk of the Court maintain one file and one docket for all of the Debtors' chapter 11 cases, which file and docket shall be the file and docket for Constar International Inc.

27. The Debtors further request that the caption of these chapter 11 cases be modified as follows to reflect their joint administration:

---

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CONSTAR INTERNATIONAL INC., et al.,[1] | ) | Case No. 08-_____ (____) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---

[1] The Debtors and the last four digits of their respective tax identification numbers are: Constar International Inc. (XX-XXX9304), BFF, Inc. (XX-XXX1229), DT, Inc. (XX-XXX7693), Constar, Inc. (XX-XXX0950), Constar Foreign Holdings, Inc (XX-XXX8591) and Constar International U.K. Limited. The address of Constar International Inc., BFF, Inc., DT, Inc., Constar, Inc. and Constar Foreign Holdings, Inc. is One Crown Way, Philadelphia, Pennsylvania 19154. The address of Constar International U.K. Limited is Moor Lane Trading Estate, Sherburn in Elmet, Nr Leeds, North Yorkshire LS25 6ES, UK.

28. In addition, the Debtors seek the Court's direction that a separate docket entry be made on the docket of each Debtor's chapter 11 case, substantially as follows:

> "An order has been entered in this case directing the procedural consolidation and joint administration of the chapter 11 cases of Constar International Inc., BFF Inc., DT, Inc., Constar, Inc., Constar Foreign Holdings, Inc., and Constar International U.K. Limited that have concurrently commenced chapter 11 cases. The docket in the chapter 11 case of Constar International Inc., Case No. 08-_____ (____) should be consulted for all matters affecting this case."

### Basis for Relief

29.     Pursuant to the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") Rule 1015(b), if two or more petitions are pending in the same court by or against a debtor and an affiliate, "the Court may order a joint administration of the estates." Fed. R. Bankr. P. 1015(b). Local Rule 1015-1 similarly provides for joint administration of chapter 11 cases when the facts demonstrate that joint administration "is warranted and will ease the administrative burden for the Court and the parties." In this case, Debtor Constar International Inc. is the ultimate parent company of BFF Inc., DT, Inc., Constar, Inc., Constar Foreign Holdings, Inc. and Constar International U.K. Limited. The Debtors are therefore affiliates within the meaning of section 101(2) of the Bankruptcy Code and, accordingly, this Court has the authority to grant the relief requested herein.

30.     Additionally, the joint administration of the Debtors' respective estates will ease the administrative burden on the Court and all parties in interest in these chapter 11 cases.

31.     The joint administration of these chapter 11 cases will also permit the Clerk of the Court to utilize a single docket for all of the cases and to combine notices to creditors and other parties in interest in the Debtors' respective cases. In addition, there will likely be numerous motions, applications, and other pleadings filed in these chapter 11 cases that will affect most or all of the Debtors. Joint administration will permit counsel for all parties in interest to include all of the Debtors' chapter 11 cases in a single caption for the numerous documents that are likely to be filed and served in these cases. Joint administration will also enable parties in interest in each of the chapter 11 cases to stay apprised of all the various matters before the Court.

32.     Joint administration of these chapter 11 cases will not prejudice or adversely affect the rights of the Debtors' creditors because the relief sought herein is purely procedural and is not intended to affect substantive rights. Because these chapter 11 cases involve six (6) Debtors, joint administration will significantly reduce the volume of paper that otherwise would be filed with the Clerk of this Court, render the completion of various administrative tasks less costly and minimize the number of unnecessary delays. Moreover, the relief requested by this Motion will also simplify supervision of the administrative aspects of these cases by the Office of the United States Trustee.

33.     Finally, the entry of joint administration orders in multiple related cases such as these is common in this District and elsewhere. See, e.g., In re New Century TRS Holdings, Inc., Case No. 07-10416 (Bankr. D. Del. Apr. 3, 2007) (Carey, J.) (order directing joint administration of Chapter 11 cases); In re Premium Papers Holdco, LLC, Case No. 06-10269 (Bankr. D. Del. Mar. 22, 2006) (Sontchi, J.) (same); In re Meridian Automotive Systems – Composites Operations, Inc., Case No. 05-11168 (Bankr. D. Del. Apr. 27, 2005) (Walrath, J.) (same); In re American Business Financial Services, Inc., Case No. 05-10203 (Bankr. D. Del. Jan. 26, 2005) (Walrath, J.) (same); In re Ultimate Electronics, Inc., Case No. 05-10104 (Bankr. D. Del. Jan. 12, 2005) (Walsh, J.) (same).

34.     For these reasons, the Debtors submit that the relief requested herein is in the best interests of the Debtors, their estates and creditors, and therefore should be granted.

### No Prior Request

35.     The Debtors have not previously sought the relief requested herein from this or any other Court.

**No Briefing Schedule Required**

36.     The Debtors submit that this Motion does not present any novel issues of law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure for the United States District Court for the District of Delaware (the "Local District Rules"), incorporated by reference into Local Rule 1001-1(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Rules.

**Notice**

37.     Notice hereof has been provided to: (a) the Office of the United States Trustee; (b) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (c) counsel to the Debtors' secured lenders; (d) counsel to the indenture trustee for each of the Senior Subordinated Notes and the Senior Secured FRNs; (e) counsel to the Ad Hoc Committee; and (f) those parties requesting notice pursuant to Bankruptcy Rule 2002 in accordance with Local Rule 2002-1(b) (collectively, the "Notice Parties"). Notice hereof and any order entered hereon will be served in accordance with Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, (i) directing the joint administration of the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1, and (ii) granting such other and further relief as is just and proper.

| | |
|---|---|
| Dated: Wilmington, Delaware<br><br>December 30, 2008 | /s/ Neil B. Glassman<br>Neil B. Glassman, (No. 2087)<br>Jamie L. Edmonson (No. 4247)<br>BAYARD, P.A.<br>222 Delaware Avenue<br>Suite 900<br>P.O. Box 25130<br>Wilmington, DE 19899<br><br>- and -<br><br>Andrew N. Goldman, Esq.<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>399 Park Avenue<br>New York, New York  10022<br><br>Eric R. Markus, Esq.<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>1875 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20006<br><br>Proposed Co-Counsel to the Debtors and Debtors in Possession |

# EXHIBIT A

## PROPOSED ORDER

BAY:01218880v1

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| CONSTAR INTERNATIONAL INC., et al.,[1] | ) Case No. 08-_____ (___) |
| Debtors. | ) Joint Administration Requested |

**ORDER DIRECTING JOINT ADMINISTRATION**
**OF RELATED CHAPTER 11 CASES**

Upon the Motion[2] of the above captioned Debtors for entry of an order directing the joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1; and due and proper notice of this Motion having been given; and it appearing that no other or further notice is required; and it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested is in the best interest of the Debtors, their estates, and creditors and after due deliberation, and sufficient cause appearing therefor, it is hereby

ORDERED, that the Motion is granted; and it is further

---

[1] The Debtors and the last four digits of their respective tax identification numbers are: Constar International Inc. (XX-XXX9304), BFF, Inc. (XX-XXX1229), DT, Inc. (XX-XXX7693), Constar, Inc. (XX-XXX0950), Constar Foreign Holdings, Inc (XX-XXX8591) and Constar International U.K. Limited. The address of Constar International Inc., BFF, Inc., DT, Inc., Constar, Inc. and Constar Foreign Holdings, Inc. is One Crown Way, Philadelphia, Pennsylvania 19154. The address of Constar International U.K. Limited is Moor Lane Trading Estate, Sherburn in Elmet, Nr Leeds, North Yorkshire LS25 6ES, UK.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

ORDERED, that the Debtors' chapter 11 cases shall be (i) jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1 and (ii) consolidated for procedural purposes only; and it is further

ORDERED, that the Clerk of the Court shall maintain one file and one docket for all of the Debtors' chapter 11 cases, which file and docket shall be the file and docket for Constar International Inc.'s chapter 11 case, Case No. 08-_____ (__); and it is further

ORDERED, that all pleadings filed in the Debtors' chapter 11 cases shall bear a consolidated caption in the following form:

---

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CONSTAR INTERNATIONAL INC., et al.,[1] | Case No. 08-_____ (____) |
| Debtors. | Jointly Administered |

---

[1] The Debtors and the last four digits of their respective tax identification numbers are: Constar International Inc. (XX-XXX9304), BFF, Inc. (XX-XXX1229), DT, Inc. (XX-XXX7693), Constar, Inc. (XX-XXX0950), Constar Foreign Holdings, Inc (XX-XXX8591) and Constar International U.K. Limited. The address of Constar International Inc., BFF, Inc., DT, Inc., Constar, Inc. and Constar Foreign Holdings, Inc. is One Crown Way, Philadelphia, Pennsylvania 19154. The address of Constar International U.K. Limited is Moor Lane Trading Estate, Sherburn in Elmet, Nr Leeds, North Yorkshire LS25 6ES, UK.

---

and it is further

ORDERED, that the Clerk of the Court shall make a docket entry in each Debtor's chapter 11 case, substantially as follows:

> "An order has been entered in this case directing the procedural consolidation and joint administration of the chapter 11 cases of Constar International Inc., BFF Inc., DT, Inc., Constar, Inc., Constar Foreign Holdings, Inc. and Constar International U.K.

>   Limited that have concurrently commenced chapter 11 cases. The docket in the chapter 11 case of Constar International Inc., Case No. 08-_____ (____) should be consulted for all matters affecting this case."

and it is further

>   ORDERED, that this Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Wilmington, Delaware
Dated: _____, 200_

                                                    United States Bankruptcy Judge