## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CONSTAR INTERNATIONAL INC., et al.,[1] | ) Case Nos. 08-13432 (PJW) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Re: Docket Nos. 14 and 42** |

### FINAL ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTIONS 363 AND 364 OF BANKRUPTCY CODE, (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS TO POSTPETITION LENDERS PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (III) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF BANKRUPTCY CODE, (IV) AUTHORIZING DEBTORS TO REPAY CERTAIN PREPETITION INDEBTEDNESS, (V) APPROVING ASSUMPTION OF CERTAIN ANCILLARY LOAN DOCUMENTS PURSUANT TO SECTION 365 AND PROVIDING CASH COLLATERAL THEREFOR AND (VI) PROVIDING ADEQUATE PROTECTION TO PREPETITION LENDERS PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF BANKRUPTCY CODE

Upon the motion (the "*Motion*") dated December 30, 2008 of **Constar International Inc., Constar Inc., BFF Inc., DT, Inc., Constar International U.K. Limited and Constar Foreign Holdings, Inc.,** as debtors and debtors in possession (each, individually a *"Debtor"* and collectively, the *"Debtors"*), (a) for the entry of interim and final orders authorizing the Debtors to do the following:

---

[1] The Debtors and the last four digits of their respective tax identification numbers are: Constar International Inc. (XX-XXX9304), BFF, Inc. (XX-XXX1229), DT, Inc. (XX-XXX7693), Constar, Inc. (XX-XXX0950), Constar Foreign Holdings, Inc (XX-XXX8591) and Constar International U.K. Limited. The address of Constar International Inc., BFF, Inc., DT, Inc., Constar, Inc. and Constar Foreign Holdings, Inc. is One Crown Way, Philadelphia, Pennsylvania 19154. The address of Constar International U.K. Limited is Moor Lane Trading Estate, Sherburn in Elmet, Nr Leeds, North Yorkshire LS25 6ES, UK.

(i)      obtain postpetition financing pursuant to sections 363 and 364 of title 11 of the United States Code (the "***Bankruptcy Code***") by entering into a Senior Secured Super-Priority Debtor In Possession and Exit Credit Agreement among **Constar International Inc.** ("***Borrower***"), the other Debtors, as Guarantors, the lenders party thereto from time to time and Citicorp USA, Inc. as Administrative Agent (the "***Postpetition Agent***") dated as of December 31, 2008, (as the same may be amended, supplemented or otherwise modified from time to time, the "***Postpetition Credit Agreement***") substantially in the form of the agreement annexed as Exhibit "A" to the order dated December 31, 2008, approving, among other things, the transactions provided for in the Postpetition Credit Agreement (the "***Interim Order***");

(ii)     grant Liens and superpriority claims to and on behalf of and for the benefit of the Postpetition Agent and the Postpetition Lenders and other Secured Parties under the Postpetition Credit Agreement (collectively, the "***Postpetition Lenders***") in all Collateral (as hereinafter defined) in accordance with the Postpetition Credit Agreement and to secure any and all of the Postpetition Obligations (as hereinafter defined);

(iii)    apply the cash proceeds of Prepetition Collateral to repay the Prepetition Indebtedness as provided in the Interim Order and to apply the proceeds of the Postpetition Indebtedness to repay in full in cash any remaining outstanding Prepetition Indebtedness in accordance with this Final Order (as hereinafter defined) and the Postpetition Credit Agreement;

(iv)     assume the Swap Agreement (as herein defined) on the terms set forth in the Interim Order, and

2

(v)    pending a final hearing on the Motion (the "**Final Hearing**"),

obtain emergency postpetition loans under the Postpetition Credit Agreement to and

including the date on which the Final Order is entered (the "**Interim Facility**"); and

(b) in accordance with Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), requesting that this Court schedule the Final Hearing and approve notice

with respect thereto;

Having considered the Motion and the exhibits attached thereto (including, without limitation,

the Postpetition Credit Agreement) and a hearing to consider approval of the Interim Facility and

the other matters detailed above having been held and concluded on December 31, 2008 (the

"**Interim Hearing**"); and the Interim Order having been entered and the Final Hearing have been

held and concluded on the date hereof; and upon all of the pleadings filed with the Court and all

of the proceedings held before the Court; and after due deliberation and consideration and good

and sufficient cause appearing therefor,

THE COURT HEREBY FINDS AS FOLLOWS:

A.    On December 30, 2008 (the "**Petition Date**"), each of the Debtors filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States

Bankruptcy Court for the District of Delaware (the "**Court**"). The chapter 11 cases of the

Debtors are being jointly administered in the Court (the "**Chapter 11 Cases**"). Each of the

Debtors is continuing in the management and possession of its business and properties as a

debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.    No request has been made for the appointment of a trustee or examiner,

and the official committee of unsecured creditors of the Debtors' chapter 11 cases (the

"**Committee**") was appointed on January 14, 2009.

3

C.      Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2). The Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      Without prejudice to the rights of the Committee or any other party in interest, but subject to the limitations set forth in Paragraphs 10 and 37(b) below, the Debtors acknowledge, admit and confirm the following as of the Petition Date:

1.      Pursuant to that certain Credit Agreement, dated as of February 11, 2005 (as amended, restated, supplemented or otherwise modified from time to time, the "*Prepetition Credit Agreement*"), by and among the Borrower, Citicorp USA, Inc. as Administrative Agent (the "*Prepetition Agent*"), the lenders from time to time party thereto (together with all guarantees, security agreements, subordination agreements, intercreditor agreements, deposit and securities account control agreements, indentures, notes, mortgages, pledges, instruments and any other agreements and documents delivered pursuant thereto or in connection therewith, including, without limitation, the "Loan Documents" as defined in the Prepetition Credit Agreement other than the Swap Agreement (collectively, and as amended, restated, supplemented or otherwise modified from time to time, together with the Prepetition Credit Agreement, the "*Prepetition Financing Documents*"), the Prepetition Agent and the lenders party thereto and certain of the other Secured Parties as defined therein (the "*Prepetition Lenders*") made certain loans, advances, and other financial accommodations, and provided

4

for the issuance of letters of credit, to the Borrower to fund, among other things, the operations of the Debtors.

2.      Pursuant to the Prepetition Credit Agreement and other Prepetition Financing Documents (other than the Swap Agreement as defined below), the Debtors were, as of December 30, 2008, indebted to the Prepetition Agent and the Prepetition Lenders in the principal amount of the Prepetition Indebtedness (as defined below), exclusive of accrued but unpaid interest, costs, fees and expenses, of approximately $20 million (exclusive of approximately $10.1 million face amount of issued and outstanding letters of credit).  For purposes of this Final Order, the term *"**Prepetition Indebtedness**"* shall mean and include, without duplication, any and all amounts owing or outstanding under the Prepetition Credit Agreement (including, without limitation, all Obligations as defined in the Prepetition Credit Agreement other than Obligations arising in respect of the Swap Agreement) or any other Prepetition Financing Document (other than the Swap Agreement), interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable pursuant to the Prepetition Credit Agreement or any other Prepetition Financing Document), and any and all obligations and liabilities, contingent or otherwise, owed in respect of the letters of credit or other Obligations outstanding thereunder.

3.      Pursuant to certain pledge agreements, security agreements, deposit and securities account control agreements, mortgages, intellectual

5

property security agreements, landlord personal property collateral access agreements, assignments and other documents and agreements, including the Collateral Documents as defined in the Prepetition Credit Agreement (as amended, restated, supplemented or otherwise modified from time to time, collectively, the "*Prepetition Security Documents*"), and the other Prepetition Financing Documents, the Debtors granted (i) first priority Liens and continuing pledges and security interests in the collateral (as defined in the certain Pledge and Security Agreement, dated as of February 11, 2005 constituting a part of the Prepetition Security Documents) to and/or for the benefit of the Prepetition Agent and Prepetition Lenders to secure the Prepetition Indebtedness and any guarantees thereof (collectively, the "*Prepetition Liens*").  Such collateral, together with any other collateral provided under any Prepetition Financing Documents (including that described in this subparagraph), that existed as of the Petition Date and all prepetition and, subject to section 552 of the Bankruptcy Code, postpetition proceeds, products, offspring, rents, and profits thereof shall hereafter be referred to as the "*Prepetition Collateral.*"

4.      The Prepetition Financing Documents are valid and binding agreements and obligations of the Debtors, and the Prepetition Liens (i) constitute valid, binding, enforceable and perfected first priority security interests and liens, subject only to the Liens (as defined in the Prepetition Credit Agreements) permitted by the Prepetition Credit Agreement, but only to the extent such Liens are valid, enforceable, non-avoidable liens and security interests that are perfected prior to the Petition Date (or perfected after the Petition Date to the extent

6

permitted by Section 546(b) of the Bankruptcy Code), which are not subject to avoidance, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and which are senior in priority to the Prepetition Liens under applicable law and after giving effect to any applicable subordination or intercreditor agreements, and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

5.      (i) The Prepetition Indebtedness constitutes the legal, valid and binding obligation of the Debtors, enforceable in accordance with its terms, (ii) no objection, offset, defense, or counterclaim of any kind or nature to the Prepetition Indebtedness exists, and the Debtors shall not assert any claim, counterclaim, setoff, or defense of any kind, nature or description that would in any way affect the validity, enforceability, or non-avoidability of any of the Prepetition Indebtedness, and (iii) the Prepetition Indebtedness, and any amounts previously paid to any Prepetition Agent or Prepetition Lenders on account thereof or with respect thereto, are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

6.      The value of the Prepetition Collateral securing the Prepetition Indebtedness (taking into account the relative priorities therein) exceeds the amount of the Prepetition Indebtedness as of the Petition Date.

7.      The Prepetition Agent (on its behalf and on behalf of the Prepetition Lenders) perfected the security interests and Liens in and on the

7

Prepetition Collateral by the filing of UCC-1 financing statements, mortgages and other required documents against the Debtors and such collateral with the proper state and county offices and taking such other actions and obtaining such other agreements as was necessary for the perfection of such security interests and Liens.

Subject to the time limitations specified in Paragraph 37(b) below, none of the foregoing acknowledgments or agreements by the Debtors in this Paragraph D shall be binding on any Committee or any other party in interest and the foregoing acknowledgements and agreements shall not affect or limit the rights of any Committee or any other party in interest (other than the Debtors) with respect to their rights to assert, pursue, or otherwise allege any of the Claims and Defenses (as hereinafter defined) against the Prepetition Agent and the Prepetition Lenders in accordance with and subject to the terms of this Final Order.

E.    An immediate, continuing and critical need exists for the Debtors to obtain funds in order to continue the operation of their businesses. The Debtors are unable to obtain the required funds (i) in the forms of (w) unsecured credit or debt allowable under section 503(b)(1) of the Bankruptcy Code, (x) an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code, (y) unsecured debt having the priority afforded by section 364(c)(l) of the Bankruptcy Code, or (z) debt secured only as described in section 364(c)(2) or (3) of the Bankruptcy Code or (ii) on terms more favorable than those offered by the Postpetition Lenders under the Postpetition Credit Agreement, the Interim Order, this Final Order and all other agreements, documents, notes or instruments, including the Loan Documents, delivered pursuant hereto or thereto or in connection herewith or therewith, including, without limitation, the Swap Agreement, the commitment letter and fee letter referred to in the Motion (collectively with the

8

Postpetition Credit Agreement, the Interim Order and this Final Order, the "*Postpetition Financing Documents*").

F.      The Debtors have requested that, pursuant to the terms of the Postpetition Financing Documents, the Postpetition Lenders make loans and advances and provide other financial accommodations to the Debtors to be used by the Debtors solely in accordance with the terms of the Postpetition Financing Documents. The ability of the Debtors to continue their businesses and reorganize under chapter 11 of the Bankruptcy Code depends upon the Debtors obtaining such financing. The Postpetition Lenders are willing to make such loans and advances and provide such other financial accommodations on a superpriority and first priority secured basis, as more particularly described herein, pursuant to the terms and conditions of the Postpetition Financing Documents and on the condition that the Borrower assumes the Swap Agreement as described below. Accordingly, the relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtors' businesses, the management and preservation of their assets and properties, and is in the best interests of the Debtors, their estates and creditors.

G.      Based on the record before the Court, (i) the terms of the use of the Prepetition Lenders' Cash Collateral (as defined below) as provided in the Interim Order and (ii) the terms of the Postpetition Financing Documents, pursuant to which the postpetition loans, advances, letters of credit and other credit and financial accommodations have been and will be made or provided to the Debtors by the Postpetition Lenders, have been negotiated at arms' length and in "good faith," as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates and creditors. The Postpetition Lenders are extending financing to the Debtors, and the Prepetition Agents and the Prepetition Lenders have

permitted the use of their Cash Collateral, in good faith, and the Postpetition Agent and Postpetition Lenders are entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

H.    It is in the best interests of the Debtors' estates that they be allowed to finance their operations under the terms and conditions set forth herein and in the Postpetition Financing Documents. The relief requested by the Motion is necessary to avoid harm to the Debtors' estates, and good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein, and the immediate entry of this Final Order.

I.    The Borrower is a party to the ISDA Master Agreement and Schedule, dated May 16, 2005 with Citigroup Financial Products Inc. ("*CFP*") (the "*2005 Agreement*"). Commencement of the Chapter 11 Cases constituted an event of default under the 2005 Agreement and as a result of section 560 of the Bankruptcy Code, CFP is entitled to terminate the 2005 Agreement. Termination, however, would give rise to a claim by CFP against the Borrower's estate. The Borrower and CFP wish to avoid termination of the 2005 Agreement. The Borrower thus sought to assume the 2005 Agreement pursuant to section 365(a) of the Bankruptcy Code, and CFP waived its right to terminate the 2005 Agreement and consent to such assumption provided the 2005 Agreement was amended as set forth in the "Credit Support Annex" referred to in the Motion to require that cash collateral be provided for the full amount of all amounts owing thereunder (the "*Swap Indebtedness*") from time to time (the 2005 Agreement, as so amended, the "*Swap Agreement*"). The assumption of the Swap Agreement, the execution and delivery of the Credit Support Annex on January __, 2009, and the cash collateralization of the Swap Indebtedness on the terms provided in the Interim Order represents

10

an exercise of the Borrower's sound business judgment and provides demonstrable benefits to the estates.

    J.  The Prepetition Agents and Prepetition Lenders consented to the Debtors' use of the postpetition proceeds of the Prepetition Collateral ("**Cash Collateral**") and are consenting to the granting of the Postpetition Liens (as hereinafter defined) in the Collateral solely on the terms and conditions set forth in the Interim Order and this Final Order. The adequate protection provided in the Interim Order and this Final Order and other benefits and privileges contained therein and herein are consistent with and authorized by the Bankruptcy Code and are necessary in order to obtain such consent or non-objection of such parties.

    K.  In accordance with the Interim Order, notice of the Final Hearing and the relief sought by the Motion, and the hearing with respect thereto was delivered by mail on December 31, 2008 to the following parties in interest:  (i) the United States Trustee for the District of Delaware (the "*U.S. Trustee*"); (ii) those parties listed on the Consolidated List of Creditors Holding Largest Thirty Unsecured Claims Against the Debtors, as identified in the Debtors' chapter 11 petitions; (iii) counsel to the Postpetition Agent; (iv) counsel to the Prepetition Agent; (v) the office of the United States Attorney General for the District of Delaware; (vi) the Securities and Exchange Commission; (vii) counsel to the Committee; (viii) any party known to be asserting a Lien against any of the Debtors' assets; (ix) the Postpetition Lenders along with the Postpetition Agent; and (x) all parties requesting service papers pursuant to Bankruptcy Rule 2002 (notice was delivered to such parties described in clause (x) by facsimile transmission and either email or overnight delivery on January 15, 2009. Given the nature of the relief sought in the Motion, such notice constitutes sufficient and adequate notice of this Final Order pursuant to Bankruptcy Rules 2002, 4001(c) and (d), and 9014 and section

102(1) of the Bankruptcy Code, as required by sections 363(b) and 364(c) of the Bankruptcy Code, and no further notice of the Motion or this Final Order is necessary or required. The Court finds that the amendment of the Swap Agreement by execution and delivery of the Credit Support Annex and the cash collateralization of the Swap Indebtedness did not require further notice.

NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1.    The Motion is granted in its entirety on the final basis pursuant to the terms set forth herein. Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits. This Final Order shall become effective immediately upon its entry.

2.    The Debtors' entry into the Postpetition Credit Agreement and the other Postpetition Financing Documents is, on a final basis, ratified, authorized and approved. The Debtors are, on a final basis, authorized to borrow funds, obtain letters of credit, incur debt, reimbursement obligations and other obligations, grant Liens, make deposits, provide guaranties and indemnities and perform their obligations under and in accordance with the terms and conditions of the Postpetition Financing Documents.

3.    The Debtors' use of the Prepetition Lenders' Cash Collateral to repay the Obligations as defined under the Prepetition Credit Agreement as provided in the Interim Order is, on a final basis, ratified, authorized and approved. Specifically, as and to the extent that the Debtors received Cash Collateral after the Petition Date, the Debtors shall be deemed to have used such Cash Collateral to reduce indebtedness under the Prepetition Credit Agreement, and to have re-borrowed such amounts under the Postpetition Credit Agreement.

4.      The Postpetition Financing Documents constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with their terms.  No obligation, payment, transfer or grant of security under the Interim Order or this Final Order or the other Postpetition Financing Documents shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or any applicable nonbankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

5.      On December 31, 2008, the Closing Date under the Postpetition Credit Agreement, (i) all letters of credit outstanding pursuant to the Prepetition Credit Agreement became, from and after such date, and shall be and shall be deemed to be for all purposes Letters of Credit issued or outstanding under the Postpetition Credit Agreement and all obligations thereunder or relating thereto became, from and after such date, and shall be and shall be deemed to be Postpetition Obligations, and (ii) all obligations owed, or that become owed, by the Debtors to the Prepetition Agent or any Prepetition Lenders under or relating to, or any other claims held by the Prepetition Agent or any Prepetition Lenders with respect to, the Swap Agreements that are Loan Documents (as defined in the Prepetition Credit Agreement) in effect as of the Petition Date are and shall be deemed to be Postpetition Obligations.

6.      The Postpetition Financing Documents may be amended, modified, supplemented or the provisions thereof waived in accordance with their terms, without further order of this Court or notice to any party; *provided, however*, that notice of any such amendment, modification, or supplement shall be provided to the U.S. Trustee and counsel to the Committee each of which shall have five (5) business days from the date of such notice within which to object in writing to such amendment, modification or supplement; and upon any such timely written objection, such amendment, modification or supplement shall only be permitted pursuant

13

to an order of this Court. The Postpetition Financing Documents may only be materially amended, modified or supplemented upon order of this Court and with notice to the parties listed in paragraph K herein. All obligations owed to any of the Postpetition Agent and/or Postpetition Lenders (collectively, the "***Postpetition Secured Parties***") under or in connection with the Postpetition Financing Documents, including, without limitation, all Obligations and Guaranty Obligations, loans, advances, letters of credit and other indebtedness, obligations and amounts (contingent or otherwise) owing from time to time under or in connection with the Postpetition Financing Documents, and any and all other obligations at any time incurred by any of the Debtors to any of the Postpetition Secured Parties, are defined and referred to herein as the "***Postpetition Obligations***."

7.     The Debtors shall use the loans or advances made under or in connection with the Postpetition Financing Documents (including any letters of credit) solely as provided in the Interim Order and this Final Order and in the other Postpetition Financing Documents. From and after the Petition Date, amounts loaned and advanced under or in connection with the Postpetition Financing Documents (including the issuance or deemed issuance of the letters of credit) and all proceeds of Collateral, including, without limitation, all of the Debtors' existing or future cash and Cash Collateral (collectively, "***Lender Funds***"), shall not, directly or indirectly, be used to pay expenses of the Debtors or otherwise disbursed except for (i) those expenses and/or disbursements that are expressly permitted under the Postpetition Financing Documents and any DIP Budget and Cash Flow Forecast (each as defined in the Postpetition Credit Agreement) approved by the Postpetition Administrative Agent (as such DIP Budget and Cash Flow Forecast may be extended, varied, supplemented or otherwise modified in accordance with the provisions of the Postpetition Financing Documents) and (ii) compensation and

14

reimbursement of fees and expenses payable pursuant to section 330 or 331 of the Bankruptcy Code and awarded by this Court to attorneys, accountants, investment bankers, financial advisors or other professional persons retained by the Debtors or the Committee pursuant to an order of this Court; *provided, however*, that the foregoing shall not be construed as consent to the allowance of any of the amounts referred to in the preceding clause (ii) and shall not affect the right of any party in interest to object to the allowance and payment of any such amounts. Subject to the Carve-Out (as defined below), no administrative claims, including fees and expenses of professionals, shall be assessed against or attributed to any of the Postpetition Secured Parties, Prepetition Agents or Prepetition Lenders with respect to their interests in the Collateral and/or Prepetition Collateral, as applicable, pursuant to the provisions of section 506(c) of the Bankruptcy Code or otherwise by, through or on behalf of the Debtors, without the prior written consent of the Postpetition Secured Parties, Prepetition Agents and/or Prepetition Lenders, as applicable, and no such consent shall be implied from any action, inaction or acquiescence by, either with or without notice to, the Postpetition Secured Parties, Prepetition Agents or Prepetition Lenders, or otherwise. Except as set forth in the second sentence of this Paragraph, the Postpetition Secured Parties have not consented or agreed to the use of Lender Funds.

8.     The Debtors shall use the proceeds of borrowings under the Postpetition Credit Agreement to repay in full in cash on or before the business day next following the entry of this Final Order, the Prepetition Indebtedness on terms and conditions satisfactory to the Prepetition Agent; *provided, however,* that nothing in this sentence shall require the Postpetition Lenders to lend any funds or provide any other financial accommodations that they are not otherwise required to lend or provide under the terms of the Postpetition Credit Agreement.

Upon payment in full, in cash of the Prepetition Indebtedness: (i) the Prepetition Agent shall deliver to the Postpetition Agent all Collateral in its possession or under its control and pending such delivery shall hold the same as agent for the Postpetition Agent, (ii) the adequate protection duties owed by the Debtors to or for the benefit of the Prepetition Agent or Prepetition Lenders and the Adequate Protection Liens and Adequate Protection Claims provided to or for the benefit of such parties under the terms of the Interim Order and this Final Order shall be inoperative, and any and all Liens securing the Prepetition Indebtedness shall be terminated. Notwithstanding such repayment, (i) the Debtors shall promptly pay and/or reimburse the applicable Prepetition Agent and Prepetition Lenders for any and all fees, costs and expenses and losses and damages (including, without limitation, any fees, costs, losses and expenses contemplated by section 11.3 of the Prepetition Credit Agreement) incurred thereafter to the extent the Prepetition Credit Agreement expressly entitles them to such payment, indemnity or reimbursement after termination of the Prepetition Credit Agreement (subject to all parties' (other than the Debtors') reservation of rights on whether such fees, costs, losses, damages or expenses are entitled to payment, indemnity or reimbursement by the Debtors; and (ii) such amounts shall, until paid in full in cash, constitute administrative expense claims under section 503(b)(1) of the Bankruptcy Code.

9.      Borrower 's assumption of the Swap Agreement, entry into the Credit Support Annex and cash collateralization of the Swap Indebtedness is, on a final basis, hereby approved, confirmed and ratified. The automatic stay of section 362 of the Bankruptcy Code shall not apply to the exercise of any rights and remedies of CFP under the Swap Agreement (as modified by the Credit Support Annex) upon the occurrence of a default (other than the Event of Default occasioned solely by the commencement of the Chapter 11 Cases, which CFP has agreed

16

to waive in consideration of the entry of the Interim Order and this Final Order) by the Borrower

thereunder (including, without limitation, the failure to make payments or provide cash collateral

when due), and to the extent necessary, the automatic stay shall be deemed permanently

modified to permit the exercise of all such rights and remedies without the need to obtain further

approval of the Court, and none of the Debtors, the Committee and any party in interest in the

Chapter 11 Cases shall have the right pursuant to section 105(a) or 362(a) of the Bankruptcy

Code or otherwise, to enjoin CFP from the exercise of any such rights and remedies.

Amounts owed by the Borrower under the Swap Agreement (as supplemented by the Credit

Support Annex) shall be administrative expense claims under section 503(b)(1) of the

Bankruptcy Code.

        10.     Notwithstanding anything to the contrary contained in the Interim Order,

this Final Order or any Postpetition Financing Document, no Lender Funds may be used directly

or indirectly by any of the Debtors, the Committee or any other person or entity to (i) object to or

contest in any manner the Postpetition Obligations, the Postpetition Liens, the Prepetition

Indebtedness or the Prepetition Liens, or to assert or prosecute any actions, claims or causes of

action (including, without limitation, any claims or causes of action under chapter 5 of the

Bankruptcy Code) against any of the Postpetition Secured Parties, Prepetition Lenders or

Prepetition Agents without the consent of such parties or (ii) seek authorization for any party to

use any of the Lender Funds of the Postpetition Secured Parties without the consent of the

Prepetition Agent and Prepetition Lenders, the Postpetition Agents and the Postpetition Lenders

as the case may be or to obtain Liens that are senior to, or on a parity with, the Liens of the

Postpetition Agents, the Postpetition Lenders and the other Postpetition Secured Parties in the

Collateral or any portion thereof.

11.    In addition to complying with all provisions of the Postpetition Financing Documents relating to the establishment and maintenance of Control Accounts and Approved Deposit Accounts, the Debtors are hereby authorized, on a final basis, and are hereby directed to enter into any additional agreements providing for the establishment of lock boxes, blocked accounts or similar arrangements requested by the Postpetition Agent (or other banks or financial institutions acceptable to the Postpetition Agent) for the benefit and in favor of the Postpetition Secured Parties for purposes of facilitating cash collections from the Debtors in accordance with the terms of the Postpetition Financing Documents.

12.    The Postpetition Administrative Agent may from time to time establish or modify availability reserves and/or eligibility reserves and otherwise modify the Borrowing Base in accordance with the Postpetition Credit Agreement.

13.    Interest on the Postpetition Obligations shall accrue at the rates (including any default rates) and shall be paid at the times as provided in the Postpetition Financing Documents.

14.    Any and all fees paid or required to be paid in connection with the Postpetition Financing Documents are hereby authorized, on a final basis, and shall be paid in accordance with the terms and provisions of the Postpetition Financing Documents.

15.    All Postpetition Obligations (subject only to the Carve-Out (as defined below), and the Adequate Protection Claims (as defined below) provided in Paragraph 36 hereof in favor of the Prepetition Agent or the Prepetition Lenders to the extent arising from any diminution in value of the Prepetition Collateral constituting Cash Collateral, hereby constitute, under section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims against each of the Debtors (jointly and severally) having priority over all administrative

expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code,

including, without limitation, those specified in, or ordered pursuant to, sections 105, 326, 328,

330, 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code, or otherwise

(whether incurred in the Chapter 11 Cases or any conversion thereof to cases under chapter 7 of

the Bankruptcy Code or any other proceeding related hereto or thereto), which superpriority

claims shall, subject to the Carve-Out, be payable from and have recourse to all prepetition and

postpetition property of the Debtors and all proceeds thereof (including the proceeds of any

avoidance actions under chapter 5 of the Bankruptcy Code).

      16.     As security for the Postpetition Obligations, the Postpetition Agent is

hereby granted pursuant to section 364(c)(2), (c)(3) and (d) of the Bankruptcy Code for the sole

benefit of the Postpetition Secured Parties valid, binding, enforceable, first priority and perfected

Liens (the "*Postpetition Liens*") in the Collateral, which Liens are subject only to (x) the Carve-

Out, (y) non-avoidable, valid, enforceable and perfected Liens that are capitalized leases,

purchase money security interests or mechanics' liens in existence on the Petition Date, and (z)

non-avoidable, valid, enforceable Liens that are capitalized leases, purchase money security

interests or mechanics' liens in existence on the Petition Date that are perfected subsequent to the

Petition Date as permitted by section 546(b) of the Bankruptcy Code (Liens specified in this

clause (z) and the immediately preceding clause (y) are hereinafter referred to as the "*Existing*

*Liens*"); *provided, however*, that for the avoidance of doubt and without limiting the foregoing,

the Postpetition Liens shall, except as expressly provided in Paragraph 18 below, be in all

respects senior in rank and priority to any and all Liens securing any Prepetition Indebtedness,

including, without limitation, any and all Liens granted hereunder as adequate protection in

connection with such obligations, and any other Liens other than the Existing Liens.  The term

19

"*Collateral*" shall include all prepetition and postpetition notes (including intercompany notes) and all capital stock (but not more than 65% of the voting stock of their respective foreign subsidiaries other than the UK Guarantor) owned by the Borrower and Guarantors, all of the accounts, chattel paper, deposit accounts, documents, instruments, inventory, investment property, letter-of-credit rights, commercial tort claims, books and records owned by the Debtors and the Guarantors and products of all of the foregoing.

17.     Subject to the Carve-Out, the Postpetition Liens shall not be (i) subject to any Lien that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other Lien under section 364(d) of the Bankruptcy Code or otherwise other than as expressly provided in Paragraph 18 below. No claim or Lien having a priority superior to or *pari passu* with those granted by the Interim Order or this Final Order or any of the Postpetition Financing Documents with respect to the Postpetition Obligations shall be granted or allowed until the indefeasible payment in full in cash and satisfaction in the manner provided in the Postpetition Financing Documents of the Postpetition Obligations and termination of the Postpetition Financing Documents.

18.     To the extent unencumbered funds are not available to pay administrative expenses in full, the claims granted hereunder or arising under the Postpetition Financing Documents and owing to the Postpetition Secured Parties, the Postpetition Liens and any claims or Liens ranking *pari passu* with or junior in priority to such claims of the Postpetition Secured Parties and the Postpetition Liens shall be subject to payment of the Carve-Out. As used in this Final Order, "*Carve-Out*" means (i) the unpaid fees of the clerk of the Bankruptcy Court and the United States Trustee pursuant to 28 U.S.C. § 1930(a), (ii) the aggregate allowed unpaid fees and

expenses payable under sections 330 and 331 of the Bankruptcy Code to professional persons

retained pursuant to an order of the Court by the Debtors or the Committee appointed in these

chapter 11 cases, paid after the occurrence and during the continuance of an Event of Default in

the aggregate amount not to exceed $2,250,000; *provided, however*, that the Carve-Out shall not

include, apply to or be available for (a) any success fee or similar payment to any professionals

or other persons payable in connection with a restructuring or asset disposition with respect to

the Debtors or otherwise, or (b) any fees or expenses incurred by any party, including any

Debtors or any Committee, or their respective professionals in connection with, or relating to, the

prosecution of any claims, causes of action, adversary proceedings or other litigation against any

of the Postpetition Secured Parties, the Prepetition Lenders or the Prepetition Agents, including,

without limitation, challenging the amount, validity, perfection, priority or enforceability of or

asserting any defense, counterclaim or offset to, the Postpetition Obligations, the Postpetition

Liens, the Prepetition Indebtedness or the Prepetition Liens.  So long as no Event of Default shall

have occurred and be continuing, the Debtors shall be permitted to pay compensation and

reimbursement of expenses allowed and payable under sections 330 and 331 of the Bankruptcy

Code and pursuant to the orders of this Court, as the same may be due and payable, and the same

shall not reduce the Carve-Out.  Any such payments made after the occurrence and during the

continuance of an Event of Default shall reduce the Carve-Out, unless the Event of Default is

subsequently cured.  The Postpetition Agent shall be entitled to reduce the Available Revolving

Credit (by increasing reserves or otherwise) in connection with the Carve-Out, as permitted by

the Postpetition Credit Agreement.  Nothing herein shall be construed to impair the ability of any

party in interest to object to any fees, expenses, reimbursement or compensation of any

professionals.

19.    Notwithstanding anything herein or in the Interim Order to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (a) any of the rights of any of the Postpetition Secured Parties, the Prepetition Agent or any Prepetition Lenders under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of any of the Postpetition Secured Parties, the Prepetition Agent or any Prepetition Lenders to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or examiner (including with expanded powers) or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans or (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the Postpetition Secured Parties or the Prepetition Lenders.

20.    The grant of adequate protection to the Prepetition Agent and Prepetition Lenders as set forth in the Interim Order is hereby approved, ratified and confirmed on a final basis.

21.    Notwithstanding anything herein, in the Interim Order or in the other Postpetition Financing Documents, on the Revolving Credit Termination Date (as defined in the Postpetition Credit Agreement), the Debtors (i) shall no longer, pursuant to the Interim Order, this Final Order, the other Postpetition Financing Documents or otherwise, be authorized to borrow funds or incur indebtedness hereunder or under the other Postpetition Financing Documents or to use any proceeds of the Postpetition Obligations already received (and any obligations of the Postpetition Lenders to make loans or advances or issue letters of credit hereunder or under the other Postpetition Financing Documents automatically shall be

terminated) and (ii) shall deposit in an account designated by the Postpetition Agent cash in an amount equal to 105% of the face amount of all outstanding letters of credit.

22.      Notwithstanding anything herein or in the Interim Order or the occurrence of the Revolving Credit Termination Date (as defined in the Postpetition Credit Agreement), all of the rights, remedies, benefits and protections provided (i) to the Postpetition Secured Parties under the Interim Order or this Final Order and the other Postpetition Financing Documents and (ii) to the Prepetition Agents and Prepetition Lenders under the Interim Order and this Final Order shall survive such Revolving Credit Termination Date (or Termination Event, if earlier). Upon such Revolving Credit Termination Date (or Termination Event, if earlier), the principal of and all accrued interest and fees and all other Postpetition Obligations, as well as the Prepetition Indebtedness, shall, in each instance, be immediately due and payable, and the Postpetition Secured Parties, and the Prepetition Agent, and the Prepetition Lenders shall have all other rights and remedies provided in the Interim Order and this Final Order, the other Postpetition Financing Documents, the Prepetition Financing Documents (as applicable) and applicable law. The Postpetition Administrative Agent is authorized to appoint the Postpetition Collateral Agent to act as its agent in connection with the exercise of its rights and remedies solely against the collateral securing the Prepetition Indebtedness.

23.      The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the Postpetition Secured Parties to exercise in accordance with the terms of the Postpetition Financing Documents, upon the occurrence and during the continuation of any Event of Default (as defined in the Postpetition Credit Agreement), all rights and remedies provided for in the Postpetition Financing Documents, and to take any or all of the following actions without further order of or application

to this Court: (a) terminate the Debtors' use of Cash Collateral, if any, and cease to make any

loans or advances to the Debtors; (b) declare all Postpetition Obligations to be immediately due

and payable; (c) terminate the Revolving Credit Commitments under the Postpetition Credit

Agreement; (d) set off and apply immediately any and all amounts in accounts maintained by the

Debtors with any Postpetition Secured Parties against the Postpetition Obligations, and otherwise

enforce rights against the Collateral in the possession of any of the Postpetition Secured Parties

for application towards the Postpetition Obligations; and (e) take any other actions or exercise

any other rights or remedies permitted under this Final Order, the Interim Order, the other

Postpetition Financing Documents or applicable law to effect the repayment and satisfaction of

the Postpetition Obligations; *provided, however*, that any Postpetition Secured Party shall

provide five (5) business days' written notice (by facsimile, telecopy, electronic mail or

otherwise) to the U.S. Trustee, counsel to the Debtors, counsel to the Prepetition Agent, and

counsel to the Committee prior to exercising any enforcement rights or remedies in respect of the

Collateral (other than the rights described in clauses (a), (b) and (c) above (to the extent they

might be deemed remedies in respect of the Collateral) and other than with respect to freezing

any deposit accounts or securities accounts); *provided further* that no such notice shall be

provided to counsel to the Prepetition Agents after repayment in full in cash of all the Prepetition

Indebtedness in accordance with the Interim Order and this Final Order. The rights and remedies

of the Postpetition Secured Parties specified herein are cumulative and not exclusive of any

rights or remedies that the Postpetition Secured Parties may have under the other Postpetition

Financing Documents or otherwise.

          24.     If the Postpetition Secured Parties shall at any time exercise any of their

respective rights and remedies hereunder, under the other Postpetition Financing Documents or

24

under applicable law in order to effect payment or satisfaction of the Postpetition Obligations or
to receive any amounts or remittances due hereunder or under the other Postpetition Financing
Documents, including without limitation, foreclosing upon and selling all or a portion of the
Collateral, the Postpetition Secured Parties shall have the right without any further action or
approval of this Court to exercise such rights and remedies as to all or such part of the Collateral
as the Postpetition Secured Parties shall elect in their sole discretion, subject to the provision by
the applicable Postpetition Secured Parties of the written notice as provided in the preceding
paragraph. No holder of a Lien primed by the Interim Order or this Final Order or granted by the
Debtors as adequate protection shall be entitled to object on the basis of the existence of any
such Lien to the exercise by the Postpetition Secured Parties of their respective rights and
remedies under the Postpetition Financing Documents or under applicable law to effect
satisfaction of the Postpetition Obligations or to receive any amounts or remittances due
hereunder or under the other Postpetition Financing Documents (other than the Prepetition Agent
and the Prepetition Lenders solely to the extent such exercise is inconsistent with the Interim
Order or this Final Order). The Postpetition Secured Parties shall be entitled to apply the
payments or proceeds of the Collateral in accordance with the provisions of this Final Order and
the other Postpetition Financing Documents, and in no event shall any of the Postpetition
Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine
with respect to any of the Collateral or otherwise.

        25.    The failure or delay by any (i) Postpetition Secured Party to seek relief or
otherwise exercise its rights and remedies under the Interim Order or this Final Order or any
other Postpetition Financing Documents or (ii) Prepetition Agent or Prepetition Lenders to
exercise its or their rights and remedies under the Interim Order or this Final Order shall not

constitute a waiver of any of the rights of such Postpetition Secured Party, Prepetition Agent or Prepetition Lender hereunder, thereunder or otherwise, and any single or partial exercise of such rights and remedies against any Credit Party or Collateral shall not be construed to limit any further exercise of such rights and remedies against any or all of the other Credit Parties and/or Collateral.

26.    Except as expressly provided in the Postpetition Financing Documents and this Final Order, the Debtors shall be enjoined and prohibited from at any time during the Chapter 11 Cases granting Liens in the Collateral or any portion thereof to any other parties pursuant to sections 364(d), 503(b) or 507(b) of the Bankruptcy Code or otherwise. The Debtors shall be enjoined and prohibited from at any time using the Collateral or proceeds of the Postpetition Indebtedness except pursuant to the terms and conditions of this Final Order and the other Postpetition Financing Documents.

27.    The Debtors shall execute and deliver to the Postpetition Secured Parties all such agreements, financing statements, instruments and other documents as the Postpetition Agent or any of the Postpetition Lenders may reasonably request to evidence, confirm, validate or perfect the Liens granted pursuant hereto.

28.    Without limiting the rights of access and information afforded to the Postpetition Agent and the Postpetition Lenders under the Postpetition Financing Documents, the Debtors, upon reasonable written notice and at such reasonable times during normal business hours and as often as may reasonably be requested (and, after an Event of Default (as defined in the Postpetition Credit Agreement) has occurred and is continuing, upon notice and at times that are not limited to normal business hours), shall permit any representatives designated by the Postpetition Agent or any Postpetition Lender to visit and inspect any of their properties, to

inspect, copy and take extracts from their financial and accounting records and to discuss their affairs, finances and accounts with their officers and independent public accountants.

29.    All Liens granted herein, in the Interim Order or in any Postpetition Financing Documents to or for the benefit of the Postpetition Agent or the Postpetition Lenders shall pursuant to this Final Order be, and they hereby are, valid, enforceable and perfected, effective as of the Petition Date, and (notwithstanding any provisions of any agreement, instrument, document, the Uniform Commercial Code or any other relevant law or regulation of any jurisdiction) no further notice, filing or other act shall be required to effect such perfection, and all Liens on the Approved Deposit Accounts, the Control Accounts and any other deposit accounts or securities accounts shall, pursuant to this Final Order be, and they hereby are, deemed to confer "control" for purposes of sections 8-106, 9-104 and 9-106 of the New York Uniform Commercial Code as in effect as of the Petition Date in favor of the Postpetition Agent and Postpetition Lenders; *provided, however*, that if the Postpetition Agent shall, in its sole discretion, choose to require the execution of and/or file (as applicable) such mortgages, financing statements, notices of Liens and other similar instruments and documents, all such mortgages, financing statements, notices of Liens or other similar instruments and documents shall be deemed to have been executed, filed and/or recorded *nunc pro tunc* at the time and on the date of the Petition Date. Each and every federal, state and local government agency or department may accept the entry by this Court of this Final Order as evidence of the validity, enforceability and perfection on the Petition Date of the Liens granted herein, in the Interim Order, and in the other Postpetition Financing Documents to or for the benefit of the Postpetition Secured Parties.

30.     The provisions of this Final Order shall be binding upon and inure to the benefit of each of the Postpetition Secured Parties, Prepetition Agent, Prepetition Lenders, and Debtors and their respective successors and assigns (including any chapter 7 trustee or other trustee or fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors).

31.     Based on the findings set forth in this Final Order and in accordance with section 364(e) of the Bankruptcy Code, in the event that any or all of the provisions of the Interim Order, this Final Order or any other Postpetition Financing Documents are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity, enforceability or priority of any Lien or claim authorized or created hereby or thereby or any Postpetition Obligations incurred hereunder or thereunder. Notwithstanding any such modification, amendment or vacation, any Postpetition Obligations incurred and any claim granted to the Postpetition Secured Parties hereunder, under the Interim Order or under any Postpetition Financing Documents arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this Final Order and the Postpetition Financing Documents, and the Postpetition Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits, including the Liens and priorities granted herein and therein, with respect to any such Postpetition Obligations and claim.

32.     The Debtors are authorized and directed to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of additional security agreements, pledge agreements, control agreements, mortgages and financing statements), and shall pay fees and expenses that may be required or necessary for

28

the Debtors' performance under the Postpetition Financing Documents, including, without limitation, (i) the execution of the Postpetition Financing Documents and (ii) the payment of the fees, indemnification obligations and other expenses described or provided in the Postpetition Financing Documents as such become due, including, without limitation, agent fees, commitment fees, letter of credit fees and underwriting fees and reasonable attorneys', financial advisers' and accountants' fees and disbursements as provided for in the Postpetition Financing Documents. None of such reasonable attorneys', financial advisers' and accountants' fees and disbursements shall be subject to the approval of this Court or the U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court. Notwithstanding the foregoing, the Debtors shall, promptly after payment of invoices for any such fees and disbursements, provide copies of same to the U.S. Trustee and counsel for the Committee. In addition, the Debtors are hereby authorized and directed to indemnify the Postpetition Secured Parties against any liability arising in connection with the Postpetition Financing Documents to the extent provided in the Postpetition Financing Documents. All such fees, expenses and indemnities of the Postpetition Secured Parties shall constitute Postpetition Obligations and shall be secured by the Postpetition Liens and afforded all of the priorities and protections afforded to the Postpetition Obligations under this Final Order and the Postpetition Financing Documents.

33.    The obligations of the Debtors in respect of the Postpetition Obligations, and the claims and Liens granted to or for the benefit of the Postpetition Secured Parties pursuant to the Interim Order, this Final Order or the Postpetition Financing Documents, shall not be discharged by the entry of an order (a) confirming a chapter 11 plan in the Chapter 11 Cases (and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors hereby waive such

29

discharge) or (b) converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code. Under no circumstances shall any chapter 11 plan in any of these Chapter 11 Cases be confirmed or become effective unless such plan provides that (i) the Postpetition Obligations shall be paid in full in cash and satisfied in the manner provided in the Postpetition Financing Documents on or before the effective date of such plan or (ii) subject to the terms and conditions in the Postpetition Financing Documents the Conversion Date (as defined in the Postpetition Credit Agreement) shall occur.

    34.  Until all obligations and indebtedness owing to the Postpetition Secured Parties shall have been indefeasibly paid in full in cash and satisfied in the manner provided in the Postpetition Financing Documents, no Debtor shall seek an order dismissing the Chapter 11 Cases. If an order dismissing the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349(b) of the Bankruptcy Code) that (i) the claims and Liens granted pursuant to the Interim Order or this Final Order to or for the benefit of the Postpetition Secured Parties shall continue in full force and effect and shall maintain their priorities as provided in the Interim Order or this Final Order until all obligations in respect thereof shall have been indefeasibly paid in full in cash and satisfied in the manner provided in the Postpetition Financing Documents (and that such claims and Liens shall, notwithstanding such dismissal, remain binding on all parties in interest), (ii) the claims and Liens granted pursuant to the Interim Order or this Final Order to or for the benefit of the Prepetition Agent and Prepetition Lenders shall continue in full force and effect and shall maintain their priorities as provided in this Final Order (and that such claims and Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (iii)

this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and Liens.

36. The provisions of this Final Order, including the grant of claims and Liens to or for the benefit of the Postpetition Secured Parties, the Prepetition Agents and the Prepetition Lenders, and any actions taken pursuant hereto shall survive the entry of any order converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

36. Subject in all respects to the terms and provisions of this Final Order, the Prepetition Agents and the Prepetition Lenders are, until payment in full in cash of all Prepetition Indebtedness, hereby provided with the following forms of adequate protection (which the Postpetition Agents acknowledge are acceptable to them): ·

    (a) As adequate protection of the respective interests of the Prepetition Agents and Prepetition Lenders in the Prepetition Collateral, to the extent of any diminution in the value of the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, which diminution shall be evidenced by, among other things, the aggregate amount of the Prepetition Lenders' Cash Collateral used by the Debtors since the Petition Date, as well as any diminution resulting from (i) the use by the Debtors of any other Prepetition Collateral, (ii) the imposition of the Postpetition Liens, and (iii) the imposition of the automatic stay, the Prepetition Agents, for their benefit and the benefit of the Prepetition Lenders, shall be entitled to replacement Liens (the "*Adequate Protection Liens*") (which are hereby granted to the Prepetition Agents), subject and junior only to the Postpetition Liens, Existing Liens (but only to the extent such Existing Liens are senior in priority to the Prepetition Liens) and the Carve-Out, on all Collateral.

31

Except as provided in this Final Order, the Adequate Protection Liens shall not be made subject to or *pari passu* with any Lien on the Collateral by any order subsequently entered in the Chapter 11 Cases.

(b)     As additional adequate protection of the interests of the Prepetition Agents and the Prepetition Lenders in the Prepetition Collateral, the Prepetition Agents and the Prepetition Lenders shall be entitled to allowed administrative priority claims under section 507(b) of the Bankruptcy Code (the "*Adequate Protection Claims*") for any diminution in value of the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, which diminution shall be evidenced by, among other things, the aggregate amount of the Prepetition Lenders' Cash Collateral used by the Debtors since the Petition Date, as well as any diminution resulting from (i) the use by the Debtors of any other Prepetition Collateral, (ii) the imposition of the Postpetition Liens, and (iii) the imposition of the automatic stay. The Adequate Protection Claims shall have priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code, or otherwise (whether incurred in the Chapter 11 Cases or any conversion thereof to a case under chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto), which Adequate Protection Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (including the proceeds of any avoidance actions under chapter 5

32

of the Bankruptcy Code); and (y) the Adequate Protection Claims in favor of the Prepetition Agent or the Prepetition Lenders to the extent arising from any diminution in value of Prepetition Collateral shall be subordinate and junior in right of payment and otherwise to the payment in full in cash and satisfaction in the manner provided in the Postpetition Financing Documents of the Postpetition Obligations and to the Carve-Out.

(c)    As additional adequate protection (subject to section 506(b) of the Bankruptcy Code), (i) the Prepetition Lenders shall be entitled to and shall be paid (a) the immediate cash payment on the Closing Date of all accrued and unpaid interest and fees then owing with respect to the Prepetition Indebtedness and (b) the current cash payment of interest and fees as and when due and payable under the Prepetition Financing Documents; (ii) the Prepetition Agents and Prepetition Lenders shall be entitled to and shall be paid the current cash payment of all of their fees and expenses in accordance with the terms of the Prepetition Financing Documents, including, but not limited to, the reasonable fees and expenses of legal counsel and other professionals retained by the Prepetition Agents or Prepetition Lenders; all of the amounts to be paid pursuant to the foregoing clauses (i) and (ii) shall be paid regardless of whether such amounts accrued prior to or after the Petition Date and shall be paid without further motion, fee application or order of the Court; and (iii) except for the Postpetition Financing Documents, the Postpetition Liens, the Postpetition Obligations and the Carve-out, the Debtors shall be prohibited from incurring additional obligations having

33

priority claims or Liens equal to or senior in priority to the Adequate Protection
Claims or the Adequate Protection Liens.

(d)     The Adequate Protection Liens granted pursuant to subparagraph
(a) above shall be deemed to have been perfected automatically upon entry of the
Interim Order, without the necessity of the filing of any UCC-1 financing
statement, state or federal notice, mortgage or other similar instrument or
document in any state or public record or office and without the necessity of
taking possession or "control" (within the meaning of the Uniform Commercial
Code) of any Collateral.

(e)     The Debtors shall provide the Prepetition Agents with copies of all
reports (including the DIP Budget and the Cash Flow Forecast), information and
other materials delivered to the Postpetition Agents and the Postpetition Lenders,
all reporting previously provided to the Prepetition Agents in accordance with the
Prepetition Financing Documents and such other reports, information and
materials as reasonably requested by such Prepetition Agents.  The obligations of
the Debtors to the Prepetition Agents pursuant to this subparagraph shall cease
upon the repayment in full in cash of the Prepetition Indebtedness in accordance
with the terms and conditions of this Final Order.

(f)     To the extent that any Postpetition Obligations remain unpaid, any
amounts disgorged by the Prepetition Agents and/or Prepetition Lenders in
respect of any of the Prepetition Indebtedness (whether such amounts were
received by the Prepetition Agents and/or Prepetition Lenders prior or subsequent
to the Petition Date) shall upon such disgorgement be immediately delivered by

34

the Debtors to the Postpetition Agents to be applied to repay the Postpetition

Obligations in accordance with the terms of the Postpetition Financing

Documents.

37.     (a)     With a full reservation and no waiver of any rights of the

Committee or other party in interest as provided in the following subparagraph, each Debtor in

its individual capacity forever releases, waives and discharges each Prepetition Agent and

Prepetition Lender (whether in its prepetition or postpetition capacity), together with its

respective officers, directors, employees, agents, attorneys, professionals, affiliates, subsidiaries,

assigns and/or successors (collectively, the "*Released Parties*"), from any and all claims and

causes of action arising out of, based upon or related to, in whole or in part, any of the

Prepetition Financing Documents, any aspect of the prepetition relationship between any Debtor

relating to any of the Prepetition Financing Documents or any transaction contemplated thereby,

on the one hand, and any or all of the Released Parties, on the other hand, or any other acts or

omissions by any or all of the Released Parties in connection with any of the Prepetition

Financing Documents or their prepetition relationship with any Debtor or any affiliate thereof

relating to any of the Prepetition Financing Documents or any transaction contemplated thereby,

including, without limitation, any claims or defenses as to the extent, validity, priority or

perfection of the Prepetition Liens or Prepetition Indebtedness, "lender liability" claims and

causes of action, any actions, claims or defenses under chapter 5 of the Bankruptcy Code or any

other claims and causes of action (all such claims, defenses and other actions described in this

Paragraph are collectively defined as the "*Claims and Defenses*").  Nothing contained in this

subparagraph shall affect the rights of the Committee or any other party in interest to undertake

any action with respect to, including, without limitation, any investigation or prosecution of, Claims and Defenses that is permitted in the other subparagraphs of this Paragraph.

(b)     Notwithstanding anything contained herein to the contrary, the extent, validity, priority, perfection and enforceability of the Prepetition Indebtedness, and Prepetition Liens, and all acknowledgments, admissions and confirmations of the Debtors herein, are for all purposes subject to the rights of any party in interest, other than any Debtor, to file a complaint pursuant to Bankruptcy Rule 7001 seeking to invalidate, subordinate or otherwise challenge (including a determination of the validity, priority, and extent of any lien) the Prepetition Indebtedness or Prepetition Liens; *provided, however,* that any such complaint must be filed in this Court no later than March 16, 2009 or any subsequent date that may be ordered by the Court or agreed to in writing by the Prepetition Agent, with respect to the time to file any such complaint relating to the Prepetition Indebtedness and/or Prepetition Liens. If no such complaint is filed within such time period (or such timely filed complaint does not result in a final and non-appealable order of this Court that is inconsistent with clauses (i) through (iv) of subparagraph (c) or (d) of this Paragraph), then any and all Claims and Defenses against any of the Released Parties shall be, without further notice to or order of the Court, deemed to have been forever relinquished, released and waived as to such Committee and other person or entity, and if such complaint is timely filed on or before such date, any and all Claims and Defenses against any of the Released Parties shall be deemed, immediately and without further action, to have been forever relinquished, released and waived as to such Committee and other person or entity, except with respect to Claims and Defenses that are expressly asserted in such complaint. Upon a successful challenge brought pursuant to this paragraph, the Court may fashion any

appropriate remedy, including, but not limited to, the disgorgement by the Prepetition Lenders of any and all payments they received from the Debtors pursuant to this Order.

(c)     If no such complaint as to the Prepetition Indebtedness, Prepetition Liens (as applicable) or Released Parties (as applicable) is filed within the time period specified in subparagraph (b) above, or such timely filed complaint does not result in a final and non-appealable order of this Court that is inconsistent with clauses (i) through (iv) of this subparagraph, then, without the requirement or need to file any proof of claim with respect thereto, (i) the Prepetition Indebtedness shall constitute allowed, fully secured claims for all purposes in the Chapter 11 Cases and any subsequent proceedings under the Bankruptcy Code, including, without limitation, any chapter 7 proceedings if any Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code (each, a *"Successor Case"*), (ii) the Prepetition Liens (as applicable) shall be deemed legal, valid, binding, enforceable, perfected, not subject to subordination (except as to the Postpetition Liens and as otherwise specified in this Final Order, the Postpetition Financing Documents and the Prepetition Financing Documents) or avoidance for all purposes in the Chapter 11 Cases and any Successor Case, (iii) the release of the Claims and Defenses against the Released Parties shall be binding on all parties in interest in the Chapter 11 Cases and any Successor Case, and (iv) the Prepetition Indebtedness, the Prepetition Liens (as applicable), releases of the Claims and Defenses against the Released Parties (as applicable), and prior payments on account of or with respect to the Prepetition Indebtedness shall not be subject to any other or further claims, cause of action, objection, contest, setoff, defense or challenge by any party in interest for any reason, including, without limitation, by any successor to or estate representative of any Debtor. Nothing in the Interim Order or this Final Order shall confer

37

standing upon the Committee or any other person or entity to bring, assert, commence, continue, prosecute or litigate the Claims and Defenses against any Released Party.

(d)     For purposes of subparagraph (b) above, any chapter 7 or chapter 11 trustee appointed or elected in these cases shall, until expiration of the challenge period described above and thereafter for the duration of any litigation commenced by the filing of a complaint described in subparagraph (b) (whether commenced by such trustee or commenced by any other party in interest if commenced on behalf of the debtors' estates), be deemed to be a party "other than the Debtor" and shall not, for purposes of such litigation, be bound by the acknowledgments, admissions and confirmations of the Debtors in this Final Order.

38.     Notwithstanding anything to the contrary herein, in the Interim Order, or in any Postpetition Financing Document, or in any Prepetition Financing Document, the Postpetition Liens and the superpriority claims granted to the Postpetition Secured Parties hereunder and under the other Postpetition Financing Documents are and shall be at all times (including, without limitation, after the occurrence of a Termination Event) senior and prior in all respects to (a) the Adequate Protection Liens and all other Liens securing any Prepetition Indebtedness, in all cases, whether granted under the Interim Order, this Final Order, the Prepetition Financing Documents, or otherwise, and (b) the Adequate Protection Claims, any other obligations in respect of adequate protection and all other claims held by the Prepetition Agents and Prepetition Lenders (including, without limitation any superpriority claims in addition to the Adequate Protection Claims), in each case, whether arising under or related to the Prepetition Financing Documents, the Interim Order, this Final Order or otherwise.

39.     In the event that the Prepetition Indebtedness is not paid and satisfied in full on or before the earlier of (i) the date that is one business day after the date of entry of this

38

Final Order, (ii) the occurrence of the Maturity Date, (iii) the occurrence of an Event of Default and the taking of any enforcement action in connection therewith under the Postpetition Financing Documents, (iv) the entry of any order of the Court, other than the Interim Order or this Final Order, that materially impairs the security interests, claim priorities, rights or protections granted to the Prepetition Agents and the Prepetition Lenders pursuant to the Prepetition Financing Documents, the Interim Order, or this Final Order, (v) the date any Cash Collateral is expended other than in accordance with the provisions of the Interim Order or this Final Order, the cash flow forecast delivered pursuant to Section 6.1(i) of the Postpetition Credit Agreement or Section 7.9 of the Postpetition Credit Agreement (as in effect on the date hereof) then with respect to the Collateral (whether prepetition or postpetition), the automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the Prepetition Agent to exercise (subject to the priorities in set forth in the immediately preceding paragraph) all rights and remedies provided for in the Prepetition Financing Documents, and to take any or all of the following actions without further order of or application to this Court: (i) terminate the Debtors' use of Cash Collateral; (ii) declare all Prepetition Indebtedness to be immediately due and payable; (iii) set off and apply immediately any and all amounts in accounts maintained by the Debtors with any Prepetition Lenders against the Prepetition Indebtedness, and otherwise enforce rights against the Current Asset Collateral in the possession of any of the Prepetition Lenders for application towards the Prepetition Indebtedness; and (iv) take any other actions or exercise any other rights or remedies permitted under this Final Order, the Prepetition Financing Documents or applicable law to effect the repayment and satisfaction of the Prepetition Indebtedness, the Adequate Protection Claims and the Adequate Protection Liens; *provided, however*, that any Prepetition Agent shall provide five

(5) business days' written notice (by facsimile, telecopy, electronic mail or otherwise) to the U.S.

Trustee, counsel to the Postpetition Administrative Agent, counsel to the Debtors, and counsel to

the Committee prior to exercising any enforcement rights or remedies in respect of the Collateral

(to the extent they might be deemed remedies in respect of such Collateral) and other than with

respect to freezing any deposit accounts or securities accounts).  The rights and remedies of the

Prepetition Agent and the Prepetition Lenders specified herein are cumulative and not exclusive

of any rights or remedies that the Prepetition Agent and the Prepetition Lenders may have under

the other Prepetition Financing Documents or otherwise.

      40.    Any Affiliate (as defined by the Bankruptcy Code) of the Debtors that

hereafter becomes a debtor in a case under chapter 11 of the Bankruptcy Code in this Court

automatically and immediately, upon the filing of a petition for relief for such Affiliate, shall be

deemed to be one of the "Debtors" hereunder in all respects, the chapter 11 case of such Affiliate

shall be deemed to be a "Chapter 11 Case" hereunder in all respects, and all of the terms and

provisions of this Final Order, including, without limitation, those provisions granting Liens on

the Collateral of each of the Debtors and claims in each of the Chapter 11 Cases, automatically

and immediately shall be applicable in all respects to such Affiliate and its chapter 11 estate.

      41.    Each Prepetition Agent shall (to the extent necessary) be authorized (but

not required) to file a master proof of claim against the Debtors (each, a "***Master Proof of

Claim***") on behalf of itself and the applicable Prepetition Lenders on account of their respective

prepetition claims arising under the Prepetition Financing Documents, and the Prepetition Agent

shall not be required to file a verified statement pursuant to Bankruptcy Rule 2019.  If the

Prepetition Agent so files a Master Proof of Claim against the Debtors, the Prepetition Agent and

each Prepetition Lender (as applicable) and each of their respective successors and assigns, shall

be deemed to have filed a proof of claim in respect of its claims against the Debtors arising under the respective Prepetition Financing Documents, and such shall be allowed or disallowed as if such entity had filed a separate proof of claim in the Chapter 11 Cases in the amount set forth in the applicable Master Proof of Claim. Each Prepetition Agent shall further be authorized to amend its respective Master Proof of Claim from time to time.

42.     The Debtors shall pay the February 2009 interest payment, at the nondefault rate, as provided for in the FRN Indenture and within the payment deadline specified therein as a form of adequate protection during the period from the Petition Date through the date of the next interest payment specified in the FRN Indenture (the "Adequate Protection Period"). The FRNs shall not receive additional adequate protection during the Adequate Protection Period unless (a) the Debtors' Disclosure Statement that is currently filed with the Bankruptcy Court, or a modified form thereof, is not approved by the Court by March 30, 2009, or (b) the Debtors' Plan, or a modified version thereof, is not confirmed by May 15, 2009, or fails to go effective by June 15, 2009. Nothing contained in this paragraph shall affect any other right of the Debtors or the Indenture Trustee for the FRNs or the holders of the FRNs. Nothing in this Final Order shall be construed to prejudice the right of any party in interest, in the event that the liens securing the obligations owed on the FRNs (or under the related indenture) are invalidated, subordinated or otherwise avoided or such obligations are invalidated, subordinated, avoided or the FRNs are determined to be undersecured, to seek disgorgement of such payments or to recharacterize such payments as payments of principal.

43.     This Final Order shall constitute findings of fact and conclusions of law.

44.     In the event that any provision of this Final Order conflicts with any term of the other Postpetition Financing Documents, this Final Order shall govern.

41

Dated:  January _____, 2009.

_____
The Honorable Peter J. Walsh
United States Bankruptcy Judge